**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | |
|---|---|
| DAMACIO PEREZ,<br><br>     Plaintiff,<br><br>v.<br><br>HOUSTON POLICE OFFICER C.<br>CASTLE,<br><br>     Defendant. | CIVIL ACTION NO. 4:26-cv-01347<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
RULE 12(b)(6) MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Damacio Perez submits this Response in Opposition to Defendant Houston Police Officer C. Castle's Rule 12(b)(6) Motion to Dismiss (Dkt. 14). The Motion should be denied. The Amended Complaint plausibly alleges that Officer Castle fired at least ten rounds into an unarmed, non-fleeing man who was at least fifty feet away, who had committed no crime as Castle knew it, and who was complying with the command to show his hands at the moment of the shot. On those well-pleaded facts, the only ones the Court may credit at this stage, Castle violated clearly established Fourth Amendment law. The Motion is, in substance, a premature summary-judgment motion based on disputed extrinsic evidence: a state criminal complaint against a non-party and an internet video. Neither belongs in a 12(b)(6) analysis.

1

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS...........................................................3

ISSUES PRESENTED ............................................................................................3

STANDARD OF REVIEW......................................................................................4

ARGUMENT............................................................................................................5

    I.  The Amended Complaint Plausibly Pleads a Fourth Amendment Excessive-Force Claim Against Officer Castle. ...................................................................................5

        A.  Castle's use of deadly force violated clearly established Fourth Amendment law on the facts alleged. ....................................................................................5

        B.  The Graham factors decisively favor Plaintiff on the pleaded facts.............6

        C.  The post-fall rounds are separately actionable. ...........................................8

    II.  The Court Must Reject Castle's Invitation to Weigh Extrinsic Evidence at the Pleading Stage. .....................................................................................................8

        A.  *Scott v. Harris* is a summary-judgment rule; it does not authorize video weighing on a Rule 12(b)(6) motion. ...................................................................9

        B.  Castle misreads *Baker v. Putnal*. .................................................................10

        C.  Exhibit 1 cannot be noticed for the truth of its contents............................10

        D.  The YouTube videos are not incorporated by reference and their content is disputed.............................................................................................................11

    III. Castle's "Few Facts" Argument Inverts the Pleading Standard. ......................12

    IV. Castle Is Not Entitled to Qualified Immunity on the Pleadings. .....................13

        A.  The right at issue was clearly established.....................................................13

        B.  Castle's "heightened pleading" argument misreads *Schultea*. ...................14

CONCLUSION AND PRAYER...............................................................................16

CERTIFICATE OF WORD COUNT .......................................................................17

CERTIFICATE OF SERVICE.................................................................................17

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed suit on January 28, 2026 (Dkt. 1) and his First Amended Complaint on April 24, 2026 (Dkt. 13), asserting two claims under 42 U.S.C. § 1983: (i) excessive force in violation of the Fourth Amendment, and (ii) unreasonable seizure by deadly force in violation of the Fourth Amendment. Officer Castle moved to dismiss on May 8, 2026 (Dkt. 14). This Response follows.

## ISSUES PRESENTED

1.    Whether the Amended Complaint states plausible Fourth Amendment claims when it alleges Officer Castle fired ten rounds into an unarmed man who was fifty feet away, had committed no offense known to Castle, did not flee, made no threatening gesture, and was complying with the command to show his hands at the moment of the shot.

2.    Whether the Court may, on a Rule 12(b)(6) motion, weigh a non-party state criminal complaint and an internet video against well-pleaded allegations. Evidence that is neither attached to nor incorporated by reference in the Amended Complaint, is neither authenticated nor undisputed, and is offered for the truth of contested facts.

3.    Whether qualified immunity may be resolved on the pleadings when controlling Supreme Court and Fifth Circuit precedent has, since at least *Tennessee v. Garner* (1985), clearly established that deadly force is unconstitutional against an unarmed person who poses no immediate threat and is not fleeing.

3

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). A complaint survives if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is not probability; it requires only "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Qualified immunity does not change the pleading standard. *Iqbal* itself was a qualified-immunity case, and it applies the ordinary plausibility test. The Fifth Circuit has confirmed that, at the pleading stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified-immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). That is the plausibility test, applied to two questions. Castle's suggestion that *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc), authorizes a pre-answer "heightened pleading" bar is wrong as a matter of doctrine. *Schultea* established a discretionary *post-answer* procedure under Federal Rule of Civil Procedure 7(a) by which a district court "may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." 47 F.3d at 1433. It is not a license to dismiss an *Iqbal*-compliant complaint.

4

Critically, the inferences run *for* the plaintiff, not the officer. The Supreme Court has reversed the Fifth Circuit on this exact point in a deadly-force case. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014) (per curiam) ("By weighing the evidence and reaching factual inferences contrary to Tolan's competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party.").

**ARGUMENT**

**I.     The Amended Complaint Plausibly Pleads a Fourth Amendment Excessive-Force Claim Against Officer Castle.**

Section 1983 reaches deprivations of constitutional rights committed under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Castle does not contest he was acting under color of law. The only question is whether the well-pleaded facts plausibly show a Fourth Amendment violation. They do.

### A.     *Castle's use of deadly force violated clearly established Fourth Amendment law on the facts alleged.*

Deadly force is a "seizure" under the Fourth Amendment and is constitutional only when objectively reasonable. *Tennessee v. Garner*, 471 U.S. 1, 7–12 (1985); *Graham v. Connor*, 490 U.S. 386, 395 (1989). *Garner* states the controlling rule for forty years: "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." 471 U.S. at 11. *Garner* further requires that "where feasible, some warning has been given." *Id.* at 11–12.

The Amended Complaint alleges every fact a deadly-force claim requires: Perez was unarmed (¶¶ 10, 24); he was at least fifty feet from the officers (¶¶ 25, 27); he had committed no offense (¶ 10); he made no threat, brandished no weapon, and gave no indication of a threat (¶¶ 10, 20, 27, 45); he did not flee (¶¶ 20, 27); he was, in fact, complying with the officers' command to show his hands at the moment Castle fired (¶¶ 23–25, 45); and Castle gave no warning before opening fire, though one was feasible (¶¶ 26, 46). Castle then fired "at least ten (10) rounds" — "approximately five (5)" of them after Perez was struck and on the ground (¶ 25). On those allegations, taken as true, no objectively reasonable officer would have understood Perez to pose an immediate threat of death or serious bodily injury.

The Fifth Circuit, sitting en banc, has held that allegations like these state a Fourth Amendment violation that overcomes qualified immunity. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc) (It has long been clearly established that, absent any immediate threat, the use of deadly force against a non-threatening suspect is unreasonable.). *Cole* also reaffirmed that a feasible warning is a constitutionally significant part of the analysis. 935 F.3d at 453. Castle ignores *Cole* entirely.

### B.    *The Graham factors decisively favor Plaintiff on the pleaded facts.*

The *Graham* factors are (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. 490 U.S. at 396. The Supreme Court most recently confirmed that the "totality of the circumstances" governs.

6

*Barnes v. Felix*, 605 U.S. ___, No. 23-1239 (2025). Each factor here points squarely to Plaintiff:

**Severity of the crime.** The Amended Complaint alleges Perez had committed no crime at all (¶ 10). Castle's suggestion that the Court should fill the pleading with Castle's preferred backstory, a trespass call about Perez's girlfriend, is not a deficiency in the complaint; it is an objection to the inferences the Rule requires the Court to draw. Even on Castle's own version, the underlying call concerned an alleged misdemeanor by a third person. *Garner* forbids deadly force on those facts. 471 U.S. at 11.

**Immediate threat.** The complaint alleges no threat. ¶¶ 10, 24, 27, 45. Perez was fifty feet away, unarmed, with empty hands removed from his pockets at the moment of the shot. ¶¶ 24–25, 27. Castle calls these allegations "conclusory." Dkt. 14 at 10. They are not. "Unarmed," "not fleeing," and "not resisting" are observable, falsifiable facts. The Fifth Circuit accepts identical allegations at the 12(b)(6) stage and routinely denies dismissal. *See, e.g., Cole*, 935 F.3d at 452–53.

**Resistance or flight.** None. Perez walked. He did not run. He did not charge. ¶ 20. He removed his hands from his pockets on command. ¶ 23. That is the opposite of resistance. To the extent Castle says Perez "failed to comply" for fifty feet, the complaint alleges he could not reasonably have known that the persons yelling at him in the dark, without lights, sirens, badges, or any verbal identification, were police officers. ¶¶ 11–19. Those facts must be credited. *Twombly*, 550 U.S. at 555–56.

The Fifth Circuit's "reaching for a weapon" cases that Castle cites do not move the needle. In *Manis v. Lawson*, 585 F.3d 839 (5th Cir. 2009), the suspect ignored *five*

commands to show his hands, repeatedly reached *under the seat* of his vehicle out of the officer's line of sight, and "moved as if he had obtained the object he sought." 585 F.3d at 842–43. *Henderson v. Harris County*, 51 F.4th 125 (5th Cir. 2022), involved a Taser — not deadly force — used after a foot pursuit during which the suspect made a "sudden turn" toward the officer. Neither case maps onto a man walking, complying, and showing empty hands. And both arose on developed summary-judgment records, not pleadings. They cannot bear the dispositive weight Castle asks them to carry on a Rule 12(b)(6) motion. *See Tolan*, 572 U.S. at 660.

### C.       *The post-fall rounds are separately actionable.*

The Amended Complaint alleges that "approximately five (5) rounds" were fired *after* Perez was struck and fell to the ground. ¶ 25. The Fifth Circuit analyzes excessive force on a force-by-force basis and "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015). Even if Castle's first shot were reasonable, it was not, the continued shooting after Perez was disabled and on the ground would independently support the claim. Castle does not address the post-fall rounds at all.

## II.     The Court Must Reject Castle's Invitation to Weigh Extrinsic Evidence at the Pleading Stage.

The bulk of Castle's Motion is not an attack on the pleadings; it is a one-sided factual brief built on (i) a state criminal complaint against a non-party (Ex. 1) and (ii) HPD's edited "Critical Incident" video posted to YouTube. Castle asks the Court to treat that material as

the operative version of events and to dismiss Perez's complaint because the pleadings are inconsistent with it. That is a summary-judgment motion in disguise and must be rejected.

### A.      *Scott v. Harris* is a summary-judgment rule; it does not authorize video weighing on a Rule 12(b)(6) motion.

Castle leans heavily on *Scott v. Harris*, 550 U.S. 372 (2007). *Scott* was decided on a motion for *summary judgment* in which the parties had developed an evidentiary record and a videotape was authenticated and undisputed. 550 U.S. at 378–80. *Scott* holds that, *at summary judgment*, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. at 380. *Scott* says nothing about Rule 12(b)(6).

Federal courts confronting video evidence at the pleading stage have refused to weigh it against the complaint. *See, e.g., Ambler v. Williamson County*, No. 1:20-CV-1068, 2021 WL 769667 (W.D. Tex. 2021); *Rush v. City of Vallejo*, No. 2605023 (E.D. Cal. 2025). The reason is the same in each: at Rule 12(b)(6) the video is unauthenticated, was not attached to or incorporated by the complaint, is open to competing interpretation, and the standard requires inferences to be drawn for the plaintiff. The Tenth Circuit has held precisely this in a §1983 deadly-force case. *Fuqua v. Santa Fe County Sheriff's Office*, 157 F.4th 1288 (10th Cir. 2025) (refusing judicial notice of bodycam and dashcam footage at the pleading stage, stating "the videos' contents are 'subject to reasonable dispute.'" *Id*. at 1299.

9

### B.    *Castle misreads Baker v. Putnal.*

Castle's Motion claims that "[w]here there is video that contradicts the plaintiff's alleged facts, the court accepts the video's depiction instead of the complaint's account," citing *Baker v. Putnal*, 75 F.3d 190, 193 (5th Cir. 1996) "(quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007))." Dkt. 14 at 2. That parenthetical is impossible. *Baker* was decided in 1996, eleven years *before Scott*. *Baker* could not have quoted *Scott*. More importantly, *Baker* is a *summary-judgment* case in which the Fifth Circuit *reversed* the district court's grant of qualified immunity to an officer who shot a young man during the Galveston spring-break disturbances. 75 F.3d at 198. Far from supporting Castle, *Baker* stands for the unremarkable proposition that an officer's self-serving narrative about a "turn toward" the officer does not entitle him to judgment as a matter of law. *Id.* The Court should disregard Castle's citation.

### C.    *Exhibit 1 cannot be noticed for the truth of its contents.*

Exhibit 1 is a state-court criminal complaint in *State v. Garrett*, Cause No. 2563643, a charging instrument against a third-party. Castle asks the Court to take judicial notice of it under Federal Rule of Evidence 201 and to credit its narrative as "the facts known to the officers at the time of the encounter with Plaintiff." Dkt. 14 at 12. Rule 201 does not permit that.

Judicial notice of court filings is permissible *only for the fact of their existence*, not for the truth of disputed assertions within them. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829–30 (5th Cir. 1998). The Probable Cause affidavit attached to Exhibit 1 is multiple-

10

layer hearsay: it is Sergeant Glover's account, prepared after the fact, of what other officers reported, what a body-camera review purported to show, and what a manager named Coleman said to him in a later interview. The affidavit is signed under oath only as to the affiant's belief in probable cause for the charge against *Ms. Garrett*, not as a sworn account of what *Castle* saw or knew at the moment he pulled the trigger. None of it is conclusive on this Court.

Exhibit 1 is also internally contradicted. Its own first page recites: "Defendant did not have a weapon on her person, but a black backpack was found on the sidewalk near Suspect Perez, which contained a silver blade knife (steak knife) with a black handle" and "both Defendant's and Suspect Perez's Social Security Cards." Ex. 1 at 2. The backpack, not on Perez, had a 3.5-inch kitchen knife inside it, never deployed, never displayed, never visible to Castle. That is not probable cause to use deadly force; it is an after-the-fact effort to construct one. In all events, the Amended Complaint pleads Castle did not know whether Perez had any weapon, and that Perez did not have one in his hands. ¶¶ 24, 28. Those allegations control.

### D.    The YouTube videos are not incorporated by reference and their content is disputed.

Castle invites the Court to watch a playlist of HPD-curated body-worn-camera clips hosted on YouTube. The videos are not attached to the Amended Complaint, are not referenced or incorporated in it, are not authenticated, are not certified as complete and unedited, and capture only the officers' fish-eye perspectives, not Perez's. A FRCP 12(b)(6) court may consider "the complaint, any documents attached to the complaint, and

any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The HPD playlist fails every prong. Even if the Court took notice that the playlist *exists*, Rule 201 does not extend to the truth or completeness of what the clips appear to show. *Taylor*, 162 F.3d at 829.

And the content itself is in dispute. Castle's prose says Perez "took a shooting stance, quickly bringing both hands together and aiming them directly at the officers." Dkt. 14 at 12. The Amended Complaint says Perez "removed his hands from the front pocket of his hooded sweatshirt" and "Plaintiff's hands were empty." ¶¶ 23–24. Whether a hand-movement looks like "compliance" or a "shooting stance" is the archetypal disputed factual inference — the kind *Tolan* forbids resolving against the plaintiff. 572 U.S. at 660. That dispute is for a jury, not Rule 12(b)(6).

### III.   Castle's "Few Facts" Argument Inverts the Pleading Standard.

Castle argues, in the alternative, that the "few facts" Plaintiff alleges are themselves enough to confer probable cause to fire because Perez walked fifty feet with his hands in his hoodie pocket before removing them. Dkt. 14 at 8–9. That argument fails twice over.

First, walking with hands in a hooded sweatshirt is not, standing alone, probable cause for deadly force. It is one of the most ordinary human postures imaginable, particularly on a cold November night. If it were enough to support lethal force, the Fourth Amendment would not protect anyone who happened to be wearing a hoodie. The Supreme

Court rejected that kind of low-bar reasoning in *Garner*, 471 U.S. at 9–11, and the Fifth Circuit reaffirmed it in *Cole*, 935 F.3d at 451–53.

Second, and more fundamentally, Castle's argument reads *all* inferences in his own favor. Perez "kept his hands in his pockets" becomes "refused to comply." Perez "walked" becomes "closed distance." Perez "removed his empty hands" becomes "took a shooting stance." That is *Tolan* error — the precise inversion the Supreme Court reversed. Justice Sotomayor, joined by Justice Ginsburg, has flagged the danger of accepting that style of inference in another HPD shooting case from this very district. *Salazar-Limon v. City of Houston*, 137 S. Ct. 1277, 1280–83 (2017) (statement of Sotomayor, J., respecting denial of certiorari) (warning that the federal courts "are sanctioning a 'shoot first, think later' approach to policing"). What was inappropriate at summary judgment in *Salazar-Limon* is doubly inappropriate here, on the pleadings, before a single deposition has been taken.

Compliance with the very command the officer issued cannot itself be the trigger for lethal force. Castle ordered Perez to "put your f*cking hands up." ¶ 22. Perez did. ¶ 23. To hold that pulling empty hands out of a pocket is a shooting offense would mean every command-and-comply sequence is a death sentence at the officer's discretion. The Fourth Amendment forbids that result. *Garner*, 471 U.S. at 9; *Cole*, 935 F.3d at 451.

## IV.    Castle Is Not Entitled to Qualified Immunity on the Pleadings.

### A.    *The right at issue was clearly established.*

Qualified immunity defeats only those claims where the law was not clearly established at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right Perez

13

asserts, to be free of deadly force when he is unarmed, non-fleeing, complying, and posing no immediate threat, has been clearly established for decades.

*Garner* supplies the rule itself: "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force." 471 U.S. at 11. *Garner* also held that a warning is constitutionally required "where feasible." *Id.* at 11–12. *Graham* supplies the framework: objective reasonableness under the totality of the circumstances. 490 U.S. at 396. And the Fifth Circuit, en banc, has applied both rules to defeat qualified immunity in a deadly-force shooting where the plaintiff alleged the suspect posed no immediate threat. *Cole*, 935 F.3d at 451–53. *Cole* predated the 2024 events here by nearly five years. Castle was on notice.

Even apart from a case directly on point, this is also an "obvious case" under *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Shooting an unarmed man more ten times, five of them after he is on the ground, in response to his compliance with a show-your-hands command is the kind of conduct any reasonable officer would recognize as unlawful. No further factual identity to a prior case is required.

### B.  Castle's "heightened pleading" argument misreads Schultea.

Castle insists Plaintiff must clear a higher pleading bar because qualified immunity is in play. He cites *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc), and *Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985). Those cases do not say what Castle claims they say.

*Schultea* established a *post-answer* procedure under Rule 7(a) by which a district court "may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading

the defense of qualified immunity." 47 F.3d at 1433. The procedure is discretionary, not mandatory, and it operates *after* the defendant has answered — not *before*, and not as a 12(b)(6) hurdle. *Elliott* was a pre-*Iqbal* decision whose general "heightened pleading" language has been displaced by *Twombly* and *Iqbal*'s plausibility standard, which itself was articulated in a qualified-immunity case. The Fifth Circuit has confirmed that the operative pleading standard for §1983 qualified-immunity cases is plausibility, applied to the elements of the constitutional violation and to the clearly-established prong. *Backe*, 691 F.3d at 648; *Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016).

The Amended Complaint meets that standard. It identifies the time, the place, the precise force used, the position of Perez relative to the officers, what was in his hands, what was not in his hands, the absence of warning, the absence of identification, the absence of resistance or flight, and the number and timing of the shots. Those are not boilerplate recitals. They are the facts of the shooting. If at some later stage the Court wishes to require additional specificity under *Schultea*, the proper procedure is a Rule 7(a) reply — not dismissal.

Should the Court nevertheless conclude that the Amended Complaint is deficient in any respect, Plaintiff respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2).

15

## CONCLUSION AND PRAYER

The Motion is a summary-judgment motion in pleading clothing. Stripped of the YouTube video and the criminal complaint against a non-party, neither of which the Court may consider for the truth of its contents on Rule 12(b)(6), the Motion offers only Castle's preferred inferences from Perez's own allegations. Those inferences must, by long-settled law, be drawn the other way. On the well-pleaded facts, Castle fired at least ten rounds at an unarmed, complying, non-fleeing, non-threatening man fifty feet away. That conduct violates the Fourth Amendment, *Garner* has said so since 1985, and *Cole* has confirmed it in this Circuit. Qualified immunity does not shield it.

Plaintiff Damacio Perez respectfully prays that the Court DENY Defendant Castle's Rule 12(b)(6) Motion to Dismiss in its entirety; alternatively, grant Plaintiff leave to amend; and grant such further relief as the Court deems just and proper.


Respectfully submitted,


*/s/ Matthew Amarin*

Matthew Amarin (admitted pro hac vice)
THE LAW OFFICES OF HAYTHAM FARAJ
1935 W. Belmont Avenue
Chicago, IL 60657
Tel. (312) 635-0800
One of Plaintiff's Attorneys


16

*/s/ Issa Paul Tannous*

ISSA PAUL TANNOUS
Texas Bar No. 24048829
Federal Id. No. 3621802
4900 Fournace Place, Suite 520
Bellaire, Texas 77401
Tel. (713) 485-5901
issa@iptannouslaw.com
One of Plaintiff's Attorneys

## CERTIFICATE OF WORD COUNT

Pursuant to the Court's procedures, the undersigned certifies that this Response, prepared in Times New Roman 13-point font, contains approximately 3,686 words, excluding the case caption, table of contents, signature block, and certificates.

*/s/ Matthew Amarin*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a true and correct copy of the foregoing Response was served on all counsel of record via the Court's CM/ECF electronic filing system.

*/s/ Matthew Amarin*

17